UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:25-CV-00419-DCR-EBA

ERIC W. CARROLL,                                                                    PLAINTIFF,

V.                              **REPORT & RECOMMENDATION**

UNIVERSITY OF KENTUCKY, *et al.,*                                         DEFENDANTS.

*** *** *** ***

This matter is before the undersigned on a Motion for Partial Dismissal, [R. 12], filed by the University of Kentucky, Regina Lysell, Brian Nichols, Daniel O'Brien, and Hector Rios-Patjane (collectively, Defendants). By prior order, Judge Danny C. Reeves referred this matter to Magistrate Judge Matthew A. Stinnett to conduct "further proceedings, including . . . preparing proposed findings of fact and recommendations with respect to any dispositive motion." [R. 9]. Judge Stinnett then entered an order of recusal, and this matter was reassigned to the undersigned. [R. 10]. The Plaintiff, Eric Carroll, filed a response in opposition. [R. 15]. Having been fully briefed, [R. 16], this matter is ripe for review. The Court recognizes that Carroll is proceeding *pro se* and, therefore, will construe his pleadings leniently. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). For the following reasons, the undersigned will recommend granting the motion in part and denying it in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On November 11, 2025, Carroll filed his complaint, *pro se*, alleging retaliation, discrimination, and deprivation of constitutional rights against the University of Kentucky and the

individual defendants, whom Carroll alleges used their positions of authority to orchestrate a prolonged campaign of retaliation. [R. 1 at pg. 1]. Six days later, Carroll filed an Amended Complaint, [R. 8], which states as follows. Carroll was employed by the University of Kentucky as a director of Infrastructure Operations, a senior leadership role in Information Technology Services (ITS). [*Id*. at pg. 1]. Beginning in 2023 and continuing through 2025, Carroll identified irregularities within ITS, including misuse of policy authority, improper procurement under 2 C.F.R. § 200.320, and systemic failures in procedural oversight. [*Id*.]. In April of 2025, Carroll discovered approximately $6 million in unaccounted infrastructure inventory and reported this discrepancy to his direct supervisor Hector J, Rios, and to Daniel P. O'Brien. [1] [*Id*. at pg. 4]. Carroll also states that "he engaged in protected speech as an elected Staff Senator, where he advocated for transparency in financial governance and raised concerns about retaliatory use of disciplinary policy." [*Id*.].

In December of 2023, Carroll filed a formal grievance to Chief Information Officer Brian T. Nichols, detailing harassment and misrepresentation by O'Brien and Rios. [*Id*.]. Following filing a grievance, Carroll states that O'Brien and others "began a sustained campaign of retaliation" against him. [*Id*. at pg. 5]. Specifically, Carroll alleges that "[b]etween 2023 and 2024 they issued fabricated disciplinary memoranda, misstated facts in communications with Rios, and actively undermined [his] credibility." [*Id*.]. Carroll alleges that O'Brien described him as "unstable," "argumentative," "confrontational," and referenced his disability to other employees to justify heightened scrutiny and disciplinary action. [*Id*. at 6].

On June 2, 2025, Carroll was suspended pending an investigation of his alleged insubordination. [*Id*.]. On June 24, 2025, Carroll states that he emailed Nichols with detailed

---

[1] Defendant Daniel O'Brien is the Executive Director of Administration, Finance, and Human Resources. [R. 8 at pg. 3].

evidence of retaliation and requested intervention, but Nichols did not respond. [*Id*.]. Carroll alleges that the University's Office of Legal Counsel, through its Deputy General Counsel, was aware of his claims of retaliation and failed to intervene. [*Id*. at pg. 7]. Ultimately, Carroll was terminated on June 26, 2025. [*Id*.].

Carroll's amended complaint asserts claims under the Kentucky Whistleblower Act (KRS 61.102); the American with Disabilities Act (ADA) for disability discrimination; and 42 U.S.C. § 1983 for First Amendment retaliation, due process deprivation, other civil rights violations. [*Id*. at pg. 8]. Carroll also asserts several state tort law claims such as tortious interference with a business relationship, defamation, and intentional infliction of emotional distress (IIED). [*Id*.]. In response to Carroll's amended complaint, the Defendants filed the underlying motion for partial dismissal. [R. 12].

### LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a plaintiff's complaint be dismissed where it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, courts must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ohio Pub. Emp. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382–83 (6th Cir. 2016) (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal citations omitted).

**ANALYSIS**

1.  <u>Motion to File a Sur-Reply</u>

As an initial matter, the undersigned will address Carroll's motion for leave to file a sur-reply. [R. 18]. Following the Defendants' reply in support of their motion for summary judgment, [R. 16], Carroll filed a motion for leave to file a sur-reply. [R. 18]. The Defendants filed a response in opposition. [R. 20]. Having considered the matter, for the following reasons, the undersigned will deny Carroll's motion. [R. 18].

The Sixth Circuit has explained that "[a]lthough the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.,* 551 Fed.Appx. 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.,* 339 F.3d 454, 481 (6th Cir. 2003)). However, sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Cousins Smokehouse, LLC v. Louisville Processing & Cold Storage, Inc.*, 588 F. Supp. 3d 753, 763 (W.D. Ky. 2022) (internal quotation marks omitted).

Here, in Carroll's proposed sur-reply, he appears to bring two main arguments that he contends entitles him relief to file his sur-reply. First, he seeks to respond to the Defendants' assertion that *Ex Parte Young* did not apply under the facts alleged in Carroll's Complaint. [R. 18-1 at pg. 3]. However, Carroll first introduced an argument about the *Ex Parte Young* application

in his response in opposition to the Defendants' motion for partial dismissal. [R. 15 at pgs. 2-3]. Therefore, this is not "new evidence" that would entitle Carroll to file a sur-reply.

Carroll also seeks to respond to the Defendants' allegation that his response in opposition, [R. 15], contained a citation to a case that did not exist. After the Defendants filed their reply which included this allegation, Carroll filed a "notice of errata." [R. 17]. Therein, he clarified two citation errors contained in his response and added different case law that supported his position. [R. 17]. Because Carroll already had the opportunity to respond to the Defendant's allegation in his notice of errata, there is no new evidence that entitles him to file a sur-reply. Therefore, the undersigned will deny Carroll's motion for leave to file a sur-reply. [R. 18].

Additionally, while the Court appreciates Carroll's notice correcting the caselaw errors, the undersigned will warn him that if he continues to cite non-existent case law, it may result in sanctions such as the pleading being stricken, filing restrictions being imposed, or recommendation that his case be dismissed. *See Buckner v. Hilton Global,* No. 3:24-CV-375-RGJ, 2025 WL 890175, at *6-7 (W.D. Ky. Mar. 21, 2025) (explaining that while *pro se* litigants' pleadings are held to a less stringent standard than those drafted by lawyers, *pro se* litigants are still required to satisfy basic pleading requirements. Further, explaining that "the use of citations to nonexistent cases may result in sanctions such as the pleading being stricken, filing restrictions imposed, or the case being dismissed.").

2. Eleventh Amendment Immunity

In their motion to dismiss, Defendants first argue that sovereign immunity bars Carroll's claims arising under 42 U.S.C § 1983, state tort law, and the Americans with Disability Act. [R. 12 at pg. 4]. The Eleventh Amendment of the United States Constitution bars suits brought in federal court against a state and its agencies, unless the state has waived sovereign immunity or

has consented to be sued. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Public University's in Kentucky, such as the University of Kentucky and their directors, are state agencies and officials for purposes of the Eleventh Amendment. *Hustell v. Sayre,* 5 F.3d 996, 999-1000 (6th Cir. 1993) (explaining that the University of Kentucky was an "arm of the state under state law"); *Weathers v. Ky. State Univ.*, No. 3:09-CV-00004, 2009 WL 1683711, at *3 (E.D. Ky. June 16, 2009) (explaining that a lawsuit against university officials was barred under the Eleventh Amendment).

### a.  42 U.S.C § 1983 Claims

The Defendants argue that Carroll's 42 U.S.C § 1983 claims against the University and the individual Defendants in their official capacities are barred under the Eleventh Amendment. [R. 12 at pg. 6]. To state a claim under § 1983, a Plaintiff must allege that a "person" acting under the color of state law deprived him of a right secured by the Constitution or federal law. *Will*, 491 U.S. at 70-71. As discussed above, the University of Kentucky, and their directors, are state agencies and officials for purposes of the Eleventh Amendment. *Hustell,* 5 F.3d at 999-1000; *Weathers*, WL 1683711, at *3. State agencies and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Wills*, 491 U.S. at 70-71. Therefore, the University and the individual Defendants in their official capacities are not subject to suit under § 1983 for monetary damages because they are not "persons." *Stewart v. Barnhart*, 2005 WL 3088543, at *4-5 (W.D. Ky. Nov. 14, 2005).

Additionally, in his response, Carroll states that he does not oppose the dismissal of "[c]laims for monetary damages against the University and against state officials sued in their

official capacities, to the extent such damages are barred by sovereign immunity." [R. 15 at pg. 2]. Therefore, because these claims are barred by sovereign immunity, the undersigned will recommend granting the Defendants' motion to dismiss with respect to Carroll's § 1983 claims against the University and the individual Defendants in their official capacities.

### b. *State Tort Law Claims*

Next, the Defendants argue that Carroll's state tort law claims against the University and the individual Defendants in their official capacities are barred under the Eleventh Amendment. [R. 12 at pg. 6]. When assessing whether the Defendants are entitled to immunity from Carroll's state tort law claims, the Court must apply Kentucky rules of sovereign immunity. *See Funke v. Coogle*, No. 3:11-CV-310-H, 2013 WL 209602 (W.D. Ky. 2013) (citing *King v. Taylor*, 694 F.3d 650, 662-64 (6th Cir. 2012)). "A county government is cloaked with sovereign immunity." *Schwindel v. Meade Cnty.,* 113 S.W.3d 159, 163 (Ky. 2003); *see also Doe v. Patton,* 381 F.Supp.2d 595, 602 (E.D. Ky. 2005) ("County governments in Kentucky are cloaked in sovereign immunity, unless such immunity is expressly waived"). "The University of Kentucky is a state agency that enjoys the benefits and protection of governmental immunity except where it has been explicitly waived by the legislature." *Jackson v. Univ. of Ky.*, No. 16-CV-257-JMH, 2016 WL 3951084, at *2 (E.D. Ky. July 20, 2016) (citing *Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 305 n.1 (Ky. 2014) (internal citations omitted)).

The Supreme Court of Kentucky will find "waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Dep't of Corr. v. Furr*, 23 S.W.3d 615, 616 (Ky. 2000) (quoting *Withers v. Univ. of Ky.*, 939 S.W.2d 340, 346 (Ky. 1990) (internal citations omitted)). Here, Carroll has not pointed to any express waiver for the claims he brings. In fact, as discussed above, Carroll

states that he does not oppose the dismissal of these claims to the extent that they are barred under sovereign immunity. [R. 15 at pg. 2]. Having found that these claims are barred, the undersigned will recommend granting the Defendants' motion to dismiss Carroll's state law claims against University and the individual Defendants in their official capacity.

### c. *ADA Claims*

Defendants also argue that Carroll's ADA claims against the University and the individual Defendants in their official capacities are barred. [R. 12 at pg. 7]. Defendants contend that the Court should construe Carroll's amended complaint as alleging violations of Title I of the ADA or Title V for any alleged retaliation. [R. 12 at pg. 7 (citing [R. 8])]. First, "the Supreme Court has held that an employee cannot maintain an action under Title I of the ADA against the State." *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 864 (6th Cir. 2024) (citing *Bd. Of Trs. Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001)). The named Defendants in their official capacity also enjoy Eleventh Amendment immunity, so Carroll's ADA claims against them are barred. *Id*. (citing *Boler v. Earley*, 865 F.3d 391, 409-10 (6th Cir. 2017)).

If Carroll brings his claim under Title V, his claim is still barred. *See id.* at 866 ("if Congress did not validly abrogate Eleventh Amendment immunity for Title I claims, then it also did not abrogate Eleventh Amendment immunity for a claim under Title V alleging retaliation for a Title I claim.") (internal citations omitted). Therefore, the undersigned will recommend that the Defendants' motion to dismiss be granted regarding Carroll's ADA claims for monetary damages against the University and the Defendants in their official capacity.

### d. *Ex Parte Young*

While Carroll concedes that many of his claims are barred, he "expressly does not concede and preserve, the ability of prospective injunctive relief and declaratory relief against appropriate

state officials sued in their official capacities, including relief such as reinstatement, correction of personnel records, and declarations regarding the unlawfulness of Defendants' conduct, as permitted under *Ex Parte Young*." [R. 15 at pg. 2]. Even when the Eleventh Amendment bars money damage claims, Plaintiffs may still seek injunctive relief against individuals and state officials in their official capacities. *Josephson v. Ganzel*, 115 F.4th 771, 782 (6th Cir. 2024) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). In his complaint, Carroll seeks "declaratory relief, restoration of benefits, and correction of the false narrative constructed to destroy his career and credibility." [R. 8 at pg. 2].

First, in his response to the Defendants' motion, Carroll states that he is seeking "reinstatement" as part of his injunctive relief. [R. 15 at pg. 2]. However, Carroll did not list that as relief sought in his complaint. [*See* R. 8]. Moreover, even if he had requested reinstatement as relief in his complaint, Carroll has not alleged facts to support a claim under *Ex Parte Young*. "The *Ex Parte Young* exception applies only when a plaintiff seeks and clearly alleges 'prospective' equitable relief to stop 'a continuing violation of federal law.' 'Nor does the exception exist for injunctive relief based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to the plaintiff.'" *Josephson*, 115 F.4th at 783 (citing *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023)). While the Sixth Circuit has held that "claims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions," *Carten v. Kent State University*, 282 F.3d 391, 396 (6th Cir. 2002) (citing *Turker v. Ohio Dep't. of Rehab. & Corrs.,* 157 F.3d 453, 459 (6th Cir.1998)), as Defendants argue, Carroll has made no allegations indicating which Defendant has the authority to reinstate him. Therefore, Carroll has not included the required factual allegations to support a claim under *Ex Parte Young*. *See Stanley*, 105 F.4th at 868 (holding that Plaintiff's complaint did not support a claim under *Ex*

*Parte Young*, explaining that "his proposed amended complaint does not indicate that [Defendants] have the power to reinstate him. Although [Plaintiff] claims [Defendants] 'presumably had the power to reinstate' by virtue of their positions at WMU, [], we are not required to presume as much.").

Next, Carroll seeks "correction of the false narrative constructed to destroy his career and credibility" by correcting his personnel records. [R. 8 at pgs. 2; 11]. The Sixth Circuit has held "that expunging disciplinary records is, as a practical matter, prospective relief." *Ashford v. Univ. of Mich.*, 89 4th 960, 969 (6th Cir. 2024). However, as with the request for reinstatement, Carroll has failed to allege facts showing that any of the Defendants have the authority to correct his record. Therefore, Carroll has failed to allege sufficient facts to support a claim under *Ex Parte Young*. *See Stanley*, 105 F.4th at 868.

Finally, Carroll seeks "restoration of benefits." [R. 8 at pg. 2]. Relief of this type is barred under the Eleventh Amendment. *See Zynda v. Arwood*, 175 F.Supp 791, 800 (E.D. Mich. Mar. 29, 2016) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) ("[T]o the extent such sought relief would require Defendants to reopen a case and compensate a Plaintiff for previously unpaid benefits, this is prohibited retroactive relief barred by the Eleventh Amendment.")). Therefore, the Court will recommend granting the Defendants' motion to dismiss Carroll's claims seeking injunctive relief.

3. <u>Kentucky Whistleblower Act Claims Against Defendants in their Individual Capacities</u>

Next, the Defendants argue that there is no individual civil liability under the Kentucky Whistleblower Act, and therefore the Court should dismiss Carroll's claims under the Act against the named Defendants in their individual capacities. [R. 12 at pg. 9]. Carroll does not oppose dismissal of these claims, because dismissal is consistent with the Supreme Court of Kentucky's

ruling in *Cabinet for Fams. & Child. v. Cummings*, 163 S.W.3d 425, 434 (Ky. 2005) ("[T]he language of KRS 61.101(2) does not impose individual civil liability under Kentucky's Whistleblower Act for reprisal against public employees of the Commonwealth and its political subdivisions.") Therefore, the undersigned will recommend that the Defendants' motion to dismiss Carroll's claims under the Kentucky Whistleblower Act against the named Defendants in their individual capacities be granted.

4. ADA Claims Against Defendants in their Individual Capacities

Similarly, Defendants assert that there is no individual civil liability under the ADA, and therefore Carroll's claims under the ADA against the named Defendants in their individual capacity should be dismissed. In his response, Carroll states that he does not oppose the dismissal of [c]laims for monetary damages under the ADA against individual defendants, as the statute does not impose individual liability." [R. 15 at pg. 2]. Therefore, the undersigned will recommend the Defendants' motion to dismiss Carroll's claims under the ADA against the Defendants in their individual capacities be granted.

5. Tortious Interference Claims

Next, Defendants argue that because Carroll's allegations do not plausibly assert that the individual Defendants acted outside the scope of their employment, he has failed to state a claim for tortious interference. [R. 12 at pg. 10]. To state a claim for tortious interference with a business relationship, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy; (2) that [the defendant] was aware of this relationship or expectancy; (3) that [the defendant] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W. 3d 1, 6 (Ky. Ct. App. 2012) (citing *Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438,

450 (W.D. Ky. 2003)). Further, in Kentucky, "[o]ne who intentionally and improperly interferes with another's prospective contractual relation ... is [liable] for the pecuniary harm resulting from loss of the benefits of the relation." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 309 (6th Cir. 2011) (citing Restatement (Second) of Torts § 766B (1979)). However, under Kentucky law a party "cannot tortiously interfere with *one's own* prospective business relationship." *United States ex rel. Doe v. Jan-Care Ambulance Service*, 187 F.Supp.3d 786, 794 (E.D. Ky. May 11, 2016) (emphasis in original). The Kentucky Court of Appeals has explained that "[a]gents of a party to a contract who act within the scope of their employment cannot interfere with that party's contract." *Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky. Ct. App. 2011) (first citing *Carmichael–Lynch–Nolan Advertising Agency, Inc. v. Bennett & Associates, Inc.,* 561 S.W.2d 99, 102 (Ky. Ct. App. 1977) (adopting Restatement (Second) of Torts, § 766 (1939), requiring the tortfeasor to be a third party, not a party to the contract or such party's agent); and then citing *Leary v. Daeschner,* 186 F.Supp.2d 774, 777 (W.D. Ky. 2001) ("no allegation of interference with a third-party contract or relationship")).

Here, there is no dispute that O'Brien, Rios, and Lysell were all employees of the University of Kentucky and acted as its agents; they were not third parties. [R. 8; R. 12 at pg. 11]. Therefore, for Carroll to plausibly assert a claim of tortious interference against the Defendants, the complaint must allege facts that show the Defendants acted outside the scope of their employment. *See Harstad*, 338 S.W.3d at 814. Defendants argue that Carroll's amended complaint lacks the facts required to make this showing.

In his amended complaint, Carroll asserts that O'Brien, Rios, and Lysell "weaponized university policy and procedure to construct pretextual disciplinary actions…cumulating in his wrongful termination." [R. 8 at pg. 4]. Caroll also alleges that O'Brien and Rios harassed him, and

that O'Brien called him "unstable, argumentative, and confrontational" to Rios and other leaders to discredit him and to portray him as unfit for leadership. [*Id*. at pgs. 5-6]. Defendants argue that "these allegations do not plausibly show O'Brien or Rios acted outside the scope of employment." [R. 12 at pg. 12]. Defendants explain that part of the basis for Carroll's harassment allegation is that O'Brien did not agree with one of Carroll's proposals, and that Rios did not take his complaints against O'Brien seriously enough. [*Id*.]. The Defendants argue that such actions are routine employment decisions. [*Id*.].

The undersigned agrees that regarding Carroll's allegations of O'Brien disagreeing with his proposal and Rios not taking his complaints serious enough, the Defendants were acting within the scope of their employment. However, Carroll also alleges that O'Brien and Rios retaliated against him and harassed him. [R. 8 at pg. 5]. Specifically, Carroll alleges that O'Brien "issued fabricated disciplinary memoranda, misstated facts in communications with Rios, and actively undermined [his] credibility." [*Id*.]. Further, Carroll states that O'Brien referred to him as "unstable," "argumentative," and "confrontational" to discredit him and portray him as unfit for leadership. [*Id*.]. Finally, Carroll alleges that O'Brien referenced [his] disability to justify heightened scrutiny and disciplinary action" to "pretext damage to [his] career." [*Id*. at pg. 6].

In the context of vicarious liability, in analyzing whether a party departures from the scope of their employment, Kentucky Courts have focused on the motives of the employee. *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). Kentucky courts have explained that an "employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Id*. (citing Restatement (Third) of Agency § 7.07 (Tentative Draft No. 5, 2004)). Here, Carroll alleges that Rios and O'Brien's actions were in retaliation following him filing grievances. [R. 8 at pg. 5]. Moreover, Carroll claims

that O'Brien "displayed personal animus" when painting him in a negative light to other employees. [*Id*.]. If these allegations are proven true, taken in light most favorable to Carroll, he has alleged sufficient factual matter to show that Rios and O'Brien were acting outside the scope of their employment. Therefore, the undersigned will recommend denying the Defendants' motion to dismiss Carroll's claims for tortious interference against O'Brien and Rios.

For Defendant Lysell, Carroll argues that after he was terminated she "contacted [him] directly demanding repayment of an alleged 'overpayment,' bypassing normal payroll processes and continuing the pattern of harassment." [R. 8 at pg. 8]. Lysell's statements regarding payroll were squarely within the scope of her employment as an administrative business officer in the ITS business office. Moreover, unlike the other Defendants, Carroll alleges no facts to support an assertion that Lysell's actions were malicious or not intended by the employee to serve a purpose of the employer. Therefore, because Lysell was acting within the scope of her employment as an agent of the University, Carroll has failed to state a claim for tortious interference against her. Thus, the undersigned will recommend granting the Defendants' motion to dismiss Carroll's tortious interference claim against Lysell.

6. Defamation Claims

The Defendants also argue that Carroll's claims for defamation should be dismissed against all the Defendants. [R. 12 at pg. 13]. To establish a claim of defamation, Carroll must show:

> (i) a false and defamatory statement concerning another; (ii) an unprivileged publication to a third party; (iii) fault amounting at least negligence on the part of the publisher; and (iv) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.,* 458 S.W.3d 276, 282 (Ky. 2014) (citing Restatement (Second) of Torts § 558 (1977)).

Page **14** of **20**

First, Defendants argue that Carroll's claims for defamation against Lysell and Rios should be dismissed. [R. 12 at pg. 13]. They explain that "Carroll does not allege that either made any statement—let alone a defamatory one." [*Id*.]. In his response, Carroll does not respond to the Defendants' assertion. [*See* R. 15]. Moreover, after reviewing Carroll's amended complaint, the undesigned agrees that Carroll has failed to allege that Lysel or Rios made a false statement. [R. 8]. Therefore, the undersigned will recommend that the Defendants' motion to dismiss Carroll's defamation claims against Lysell and Rios be granted.

Despite naming all individuals, the Defendants argue that Carroll's defamation claim appears to be directed at O'Brien, whom he alleges "referred to [him] as unstable, argumentative, and conformational." [R. 12 at pg. 14 (citing [R. 8 at pg. 5])]. Moreover, Carroll alleges that "O'Brien knowingly referenced [Carroll's] disability to justify heightened scrutiny and disciplinary actions." [R. 8 at pg. 6].

The Defendants argue that because Kentucky's common interest privilege applies to the alleged statements, Carroll has failed to state a claim for defamation. [R. 12 at pg. 13]. In certain circumstances, otherwise per se defamatory statements are allowed "because the societal interest in the unrestricted flow of communication is greater than the private interest." *Toler*, 458 S.W.3d at 282. For example, the Supreme Court of Kentucky has "recognized a privilege for individuals communicating 'where the communication is one in which the party has an interest and it is made to another having a corresponding interest.'" *Id*. (citing *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 795 (Ky. 2004)). Kentucky courts have "routinely applied this common-interest application of a qualified privilege to the employment context." *Id*. at 283 (citing *Dossett v. New York Min. & Mfg. Co.*, 451 S.W.2d 843, 845-46 (Ky. 1970)).

A qualified privilege means that "false and defamatory statements will not give rise to a cause of action unless maliciously uttered." *Id*. at 284 (citing *Stewart v. Williams*, 309 21 S.W.2d 948, 950 (Ky. 1949)). "[*A*]*ctual malice* refers to "malice in fact"—read: malevolence or ill will." *Toler*, 458 S.W.3d at 283 (emphasis in original). "With the qualified privilege, it is not so much *what* was said as it is *how* it was said. After all, the qualified privilege will provide protection despite a statement's falsity, assuming, of course, the privilege is not abused." *Id*. (emphasis in original). To show abuse of a qualified privilege:

> Abuse of the qualified privilege may be shown in a several ways, some indicating ill will or maliciousness more directly than others. These include: (1) "the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter"; (2) the "publication of the defamatory matter for some improper purpose"; (3) "excessive publication"; or (4) "the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged.

*Id*. (citing Restatement (Second) of Torts § 596). The Plaintiff bears the burden of showing that the privilege was abused. *Id*.

Here, Defendants argue that the qualified privilege applies because the alleged statements were made by O'Brien to Rios and other University employees. [R. 12 at pg. 14]. Both O'Brien and Rios held supervisory positions over Carroll. [*Id*.] Defendants explain that the qualified privilege applies because it is expected for supervisors to express opinions about their employees in the workplace. [*Id*. (citing *Toler*, 458 S.W.3d at 283 (explaining communications between a company and its employees about a co-employees work conduct qualified for the qualified privilege))].

In his response, Carroll does not dispute that the qualified privilege applies. [*See* R. 15]. Instead, Carroll argues that "[w]hether the statements were false, whether they were made with reckless disregard or retaliatory intent, and whether any qualified privilege was exceeded are

factual questions." [*Id*. at pg. 4]. The Defendants argue that dismissal is warranted because the complaint does not contain enough factual allegations to make it plausible that O'Brien made the statements with actual malice. [R. 16 at pg. 7].

However, as discussed above, Carroll alleges that O'Brien the statements were made in retaliation and that in making the statements he "displayed personal animus" against Carroll. [R. 8 at pg. 5]. These allegations, taken as true, show that O'Briens statements were made "for some improper purpose," which is one of the ways identified to show abuse of the qualified privilege. *Toler*, 458 S.W.3d at 283. Therefore, the undersigned will recommend denying Defendants' motion to dismiss Caroll's defamation claim against O'Brien.

7. <u>IIED Claims</u>

Next, the Defendants argue that Carroll has failed to state a claim for IIED because the complaint contains no factual allegations of outrageous or intolerable conduct. [R. 12 at pg. 14]. Under Kentucky law, to prove IIED, "[t]he wrongdoer's conduct must be intentional or reckless; the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; there must be a causal connection between the wrongdoer's conduct and the emotional distress, and the distress suffered must be severe." *Miracle v. Bell Cty. Emergency Med. Servs.*, 237 S.W.3d 555, 559 (Ky. Ct. App. 2007).

Moreover, "[t]he mere termination of employment and the resulting embarrassment do not rise to the level of outrageous conduct and resulting severe emotional distress necessary to support a claim for IIED." *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005). Further, even in cases where an employee's termination was based on discrimination, that does not rise to the level of extreme and outrageous conduct. *Id.* (citing *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)). IIED "is intended to redress behavior that is truly

outrageous, intolerable and which results in bringing one to his knees." *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000) (internal citation omitted). Taken in light most favorable to Carroll, his allegations still do not allege this type of outrageous conduct.

Further, while Carroll seeks damages for emotional distress, mental anguish, and therapy expenses, he has made no factual allegations about what emotional distress he experienced or the severity of that distress. [*See* R. 8]. The only allegation of emotional distress is included in the grievance filed as an attached exhibit to his complaint, [R. 8-1 at pg. 4], where Carroll states the Defendants' actions "inflicted great emotional distress upon [him]."[2] This lone statement is not enough to establish that he suffered severe emotional distress. Therefore, because Caroll has failed to establish the fourth element of IIED, the undersigned will recommend that the Defendants' motion to dismiss Carroll's IIED claims be granted. *See Swartz v. DiCarlo,* No. 1:12-CV-3112, 2014 WL 4955801, at *4 (N.D. Ohio Sept. 29, 2014) (dismissing IIED claim and explaining that "[t]here are no specifics as to how he suffered. Although heightened factual declarations are not required, something more than merely reciting the elements of the claim is not only required, but it is necessary.") (internal citation omitted); *see also Swartz v. Carlo*, No. 1:12-CV-3112, 2015 WL 1022073, at *7 (N.D. Ohio Mar. 6, 2015) (granting motion to dismiss IIED claim where complaint alleged no facts "showing [plaintiff's] emotional distress was severe and debilitating" such as "medical treatment, phobia, severe loss of the ability to eat, sleep, work, etc. ...").

## CONCLUSION

The Court, having considered the issues and being otherwise sufficiently advised,

---

[2] *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion [failure to state a claim upon which relief can be granted], it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

**IT IS ORDERED** that Carroll's motion for leave to file a sur-reply, [R. 18], is **DENIED.**

**IT IS RECOMMENDED** that:

1. The Defendants' motion to dismiss Carroll's 42 U.S.C. § 1983 claims against the University and the named Defendants in their official capacities be **GRANTED**.

2. The Defendants' motion to dismiss Carroll's state tort law claims against the University and the named Defendants in their official capacities be **GRANTED**.

3. The Defendants' motion to dismiss Carroll's ADA claims against the University and the named Defendants in their official capacities be **GRANTED**.

4. The Defendants' motion to dismiss Carroll's Kentucky Whistleblower Act claims against the University and the named Defendants in their official capacities be **GRANTED**.

5. The Defendants' motion to dismiss Carroll's claims seeking injunctive and declaratory relief against the University and the named Defendants in their official capacities be **GRANTED**.

6. The Defendants' motion to dismiss Carroll's ADA claims against the named Defendants in their individual capacities be **GRANTED**.

7. The Defendants' motion to dismiss Carroll's tortious interference claim against Lysell in her individual capacity be **GRANTED**.

8. The Defendants' motion to dismiss Carroll's defamation claim against Rios and Lysell in their individual capacities be **GRANTED**.

9. The Defendants' motion to dismiss Carroll's IIED claims against the named Defendants in their individual capacities be **GRANTED**.

10. The Defendants' motion to dismiss Carroll's tortious interference claims against

O'Brien and Rios in their individual capacities be **DENIED**.

11. The Defendants' motion to dismiss Carroll's defamation claim against O'Brien in his individual capacity be **DENIED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. FED. R. CIV. P. 72(b)(2).

Signed March 4, 2026.



**Signed By:**

*Edward B. Atkins* ℰβA

**United States Magistrate Judge**