UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ERIC W. CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-419-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| UNIVERSITY OF KENTUCKY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Defendants the University of Kentucky, Brian Nichols, Daniel O'Brien, Hector Rios-Patjane, and Regina Lysell have moved for partial dismissal of *pro se* Plaintiff Eric Carroll's claims against them. [Record No. 12] They bring their motion under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Consistent with local practice, the motion was referred to a United States Magistrate Judge for review and issuance of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B).

United States Magistrate Judge Edward B. Atkins issued his R&R on March 4, 2026, recommending that the defendants' motion be granted in part and denied in part. [Record No. 21] Only Carroll filed objections to the R&R. [*See* Record No. 22.] After reviewing Carroll's objections *de novo*, the defendants' motion will be granted in part and denied in part consistent with this Memorandum Opinion and Order.

**I.**

Carroll was a director of Infrastructure Operations in Information Technology Services ("ITS") at the University of Kentucky. [Record No. 8 at ¶ 2] In that position, he was "entrusted

- 1 -

with managing multi-million-dollar assets [and] critical campus infrastructure" in that senior leadership role. *Id.* Carroll also held "governance responsibilities as an elected Staff Senator," a position that undergirded the University's "shared-governance framework." *Id.*; [Record No. 15 at 5]. He "advocated for transparency in financial governance and raised concerns about retaliatory use of disciplinary policy" during his tenure as senator. *Id.* at ¶ 18.

Carroll began reporting "serious institutional irregularities, including questionable procurement practices under 2 CFR §200.320, misuse of policy authority by ITS Business Office executives, and systemic failures in procedural oversight" as early as 2023. [Record No. 8 at ¶ 3] Later in April 2025, he purportedly "discovered approximately $6 million in unaccounted infrastructure inventory and reported this discrepancy" to Rios-Patjane (his direct supervisor) and to O'Brien (Executive Director of ITS Administration, Finance, and Human Resource). *Id.* at ¶¶ 12, 17. Carroll alleges that O'Brien, Rios-Patjane, and Lysell, "with the tacit approval of Chief Information Officer" Nichols and "the knowing complicity of the University's Office of Legal Counsel, weaponized university policy and procedure to construct pretextual disciplinary actions against" him because he reported his concerns. *See id.* at ¶ 4. Ultimately, he was terminated for insubordination in June 2025. *Id.* at ¶ 31.

Carroll filed a Complaint upon receiving a Right to Sue letter from the United States Equal Employment Opportunity Commission. [Record Nos. 1 at III and 1-1] He later submitted an updated Complaint that included his personal signature at the Court's direction. [Record Nos. 6 and 8] The updated Complaint is otherwise identical to the original Complaint. [*Compare* Record No. 1 *with* Record No. 8.]

Carroll brings claims against the defendants for retaliation in violation of the Kentucky Whistleblower Act, KRS 61.102 (Count I); disability discrimination and harassment in

violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.* (Count II); retaliation in violation of his First Amendment rights, 42 U.S.C. §1983 (Count III); deprivation of due process in violation of his Fourteenth Amendment rights, 42 U.S.C. §1983 (Count IV); unspecified violations of his civil rights, 42 U.S.C. §1983 (Count V); tortious interference with business relationships in violation of Kentucky law (Count VI); defamation and reputational harm in violation of Kentucky law (Count VII); and intentional infliction of emotional distress ("IIED") in violation of Kentucky law (Count VIII).  [Record No. 8 at 8] He sues the University and individual Defendants O'Brien, Rios-Patjane, and Lysell in their official and individual capacity; however, he only sues Nichols in his official capacity.  *Id.* at ¶¶ 11–14.

Carroll seeks compensatory and punitive damages.  [Record No. 8 at ¶¶ 37–38, 44]  He also requests injunctive relief to restore his "accrued benefits, including vacation and retirement contributions," to direct the University to issue "a public corrective statement clearing [him] of all false allegations and [to remove] adverse references from University records," and to declare that the defendants violated the ADA, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. §1983.  *Id.* at ¶¶ 3–4.

The University and all the individual defendants sued in their official capacity move to dismiss Count II (ADA), Count III (First Amendment), Count IV (Fourteenth Amendment), Count V (unspecified civil rights), Count VI (tortious interference), Count VII (defamation), and Count VIII (IIED) for lack of subject-matter jurisdiction under Rule 12(b)(1).  [Record No. 12 at 1] They contend that those claims are barred by the University's sovereign immunity which, by extension, also bars the claims against the individual defendants in their official capacity. *Id.* 4–9.

Defendants O'Brien, Rios-Patjane, and Lysell, sued in their individual capacity, move to dismiss Count I (Kentucky Whistleblower Act)[1] and Count II (ADA) as precluded by the plain text of those statues which only allow claims against employers and covered entities, respectively. [Record No. 12 at 9–10, 16] They further move to dismiss the state law claims in Count VI (tortious interference), Count VII (defamation), and Count VIII (IIED) as inadequately pled under Rule 12(b)(6). *Id.* at 1.

Carroll's response concedes that dismissal is appropriate for Count I (Kentucky Whistleblower Act) and Count II (ADA) against O'Brien, Rios-Patjane, and Lysell in their individual capacity. [Record No. 15 at 2] He further concedes that dismissal is appropriate for Count II (ADA), Count III (First Amendment), Count IV (Fourteenth Amendment), Count V (unspecified civil rights), Count VI (tortious interference), Count VII (defamation), and Count VIII (IIED) against the University and the individual defendants in their official capacity insofar as those claims seek *monetary* relief. *See id.* Carroll insists, however, that to the extent those claims seek prospective *injunctive* relief, including "reinstatement, correction of personnel records, and declarations regarding the unlawfulness of Defendants' conduct," they are permitted under *Ex parte Young*. *Id.* Finally, he argues that Count VI (tortious interference), Count VII (defamation), and Count VIII (IIED) are adequately pled and that dismissal would be premature prior to discovery. *Id.* at 3–5.

---

[1]    The undersigned notes the defendants' lack of clarity regarding their intent to have this claim (Count I) dismissed against the official capacity defendants. [*Compare* Record No. 12 at 16 ("[T]he Court should grant the Individual Defendants' Motion to Dismiss all claims brought against them in their official capacities.") *with* Record No. 16 at 2 ("Therefore, Counts I and II against the individual defendants should be dismissed and Counts II-VIII should be dismissed against the University and the individual defendants in their official capacity.")] The Court assumes the individual defendants seek dismissal of Count I against them in their official capacities.

In their reply, the defendants argue that Carroll fails to properly invoke the *Ex parte Young* exception.  [Record No. 16 at 1] They claim that the injunctive relief Carroll seeks against the individual defendants in their official capacity is retrospective, not prospective.  *Id.* at 2–3.  And even if he could demonstrate that he seeks prospective relief, the defendants assert that Carroll has not identified which defendant could provide that relief.  *Id.* at 3–4.  And according to the defendants, Carroll's state law claims against the individual defendants in their individual capacities are insufficiently pled.  *Id.* at 4–9.

Carroll also moved to file a sur-reply that the defendants opposed as unnecessary.  [Record Nos. 18 and 20] The R&R denied his motion for a sur-reply and recommended that the defendants' motion be granted except for Carroll's tortious interference claims against O'Brien and Rios-Patjane in their individual capacity and his defamation claim against O'Brien in his individual capacity.  [Record No. 21 at 19–20]

Carroll objects to the R&R's exclusion of the *Ex parte Young* exception and insists that the Complaint demonstrates a sufficient connection between the defendants and the challenged conduct and creates a reasonable inference that Nichols has the authority to reinstate him.  [*See* Record No. 22 at 1–4, 6.]  He likewise contends that his failure to use the word "reinstatement" in his Complaint is not fatal to his invocation of the exception.  *Id.* at 7.

Carroll claims that the defendants' admission, that Rios-Patjane was his supervisor, undermines their argument that Carroll failed to identify who may provide prospective relief.  *Id.* at 5.  And to the extent that he cannot identify the "precise scope of institutional authority over reinstatement and correction of personnel records," the identities of those defendants "cannot reasonably be expected to be fully known to a terminated employee prior to discovery."  *Id.* at 4–5.

Carroll further asserts that the R&R improperly applied a more rigorous standard than what is required by Federal Rule of Civil Procedure 12(b)(6). *Id.* at 2, 4. Finally, he seeks leave to amend his Complaint should greater specificity be necessary. *Id.* at 9.

**II.**

A motion under Rule 12(b)(1) is the proper vehicle to dismiss a claim for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). And sovereign immunity "Eleventh Amendment issues are jurisdictional in nature." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). Thus, when a plaintiff brings claims against the state that the Eleventh Amendment bars, Rule 12(b)(1) serves as the proper method of dismissal. *See, e.g.*, *Stanley v. W. Michigan Univ.*, 105 F.4th 856, 866 (6th Cir. 2024).

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). When reviewing a motion under Rule 12(b)(6), the court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990).

Next, the Court liberally construes a *pro se* plaintiff's legal claims in his or her favor at the pleading stage. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Finally, although the Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.

Against the backdrop outlined above, the parties agree that dismissal is appropriate for Carroll's Kentucky Whistleblower Act (Count I) and ADA (Count II) claims against the individual defendants sued in their individual capacity. They likewise agree that he cannot bring claims for *damages* against the University or the individual defendants in their official capacity for the ADA (Count II), Section 1983 (Counts III, IV, and V), and state law (Counts VI, VII, and VIII) claims. They disagree, however, regarding whether the *Ex parte Young* exception applies to those claims insofar as they seek *injunctive relief*. And they further contest whether Carroll's state law tort claims against the individual defendants in their individual capacity (Counts VI, VII, and VIII) are sufficiently pled.

**Tort Claims:** The undersigned agrees with Magistrate Judge Atkins' determination that Carroll has failed to plausibly allege his intentional infliction of emotional distress claim against any defendant because he does not allege sufficiently outrageous conduct. [Record No. 21 at 17–18] The undersigned further agrees with the reasoning of the R&R's which concludes that only Carroll's tortious interference claims against Rios-Patjane and O'Brien in their individual capacity and defamation claim against O'Brien in his individual capacity survive Rule 12(b)(6) dismissal. *Id.* at 11–17.

Carroll alleges Rios-Patjane and O'Brien retaliated against him and that O'Brien fabricated disciplinary memoranda records and misstated facts. [Record No. 21 at 13] If true, these contentions would support the assertion that they acted with malice and outside the scope of their employment such that they could be liable for tortious interference with Carroll's employment contract with the University. *See id.* at 11–14. Carroll does not, however, state a claim against Lysell who he contends demanded repayment in the amount the University overpaid him following his termination. *Id.* at 14. As Magistrate Judge Atkins aptly notes, not only does this allegation fail to demonstrate malice, Lysell's action falls squarely within her scope of employment. *Id.* And although Carroll plausibly pleads a defamation claim against O'Brien, he does not for Rios-Patjane and Lysell because he does not allege that either made a false statement, let alone one with malice. [Record No. 21 at 15–17]

***Ex parte Young*:** The defendants argue that sovereign immunity prevents Carroll's claims against the University and the individual defendants in their official capacity for violating the ADA (Count II), Section 1983 (Counts III, IV, and V), and state tort law (Counts VI, VII, and VIII) and that he fails to properly invoke the *Ex parte Young* exception. Carroll concedes that he may not seek monetary relief against those official defendants. However, he insists that he properly invoked *Ex parte Young* for the prospective injunctive relief he seeks.

Sovereign immunity bars suits for monetary relief against a state or an arm of that state as well as state officials sued in their official capacity. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (citations omitted). But there are three exceptions to sovereign immunity: "(1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir.

2016).  *Ex parte Young* creates a limited exception to sovereign immunity when the relief sought seeks to enjoin continuing violations of federal law.  *See* 209 U.S. at 155–56; *Thiokol v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993).  "When a court addresses a claim made under *Ex parte Young*[,] it should simply ask 'whether a complainant alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Westside Mothers v. Haveman*, 289 F.3d 852, 861 (6th Cir. 2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Conner, J., concurring)).

Here, the University of Kentucky is cloaked in sovereign immunity as it is "an arm of the state under state law and not merely a political subdivision." *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).  But the University is not a "state official".  Thus, the *Ex parte Young* exception applies only to the individual defendants sued in their official capacity.  *See Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021) (citing *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 416–17 (6th Cir. 2019)).  The defendants make two arguments challenging Carroll's invocation of *Ex parte Young*: (1) the relief he seeks is retroactive, not prospective; and (2) to the extent he adequately seeks prospective relief, he fails to identify which defendants can provide that relief.  [Record No. 16 at 3–4]

The defendants appear to concede that Carroll seeks injunctive prospective relief for "declaratory relief, restoration of benefits, and correction of the false narrative constructed to destroy his career."  [Record No. 16 at 3–4] However, they contest whether his invocation of *Ex parte Young* is sufficient because he does not specify which defendants can provide the requested relief.

Again, Carroll argues that he has no way of knowing who may provide the requested relief prior to discovery as that information is within the University's control and knowledge.

[Record No. 22 at 1–7] He insists that the Complaint creates a reasonable inference that Nichols or O'Brien may provide the prospective relief he seeks. *Id.* at 3–5. And although parties agree that a request for reinstatement is generally considered prospective injunctive relief under *Ex parte Young*, they disagree whether Carroll's Complaint includes a request for reinstatement.

While Carroll does not use the word "reinstatement" in his prayer for relief, he does request "restoration of [his] accrued benefits, including vacation and retirement contributions." [Record No. 8 at ¶ 44] Despite being "inartfully [pled]," considering Carroll's *pro se* status and the fact that it would make no sense to *restore* his accrued benefits *unless* he was reinstated, the undersigned construes this as a request for reinstatement. *Erickson*, 551 U.S. at 94 (noting that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," and that all "pleadings shall be so construed as to do substantial justice") (citation modified).

The fact that Carroll cannot yet identify the specific defendants who can provide that relief is not fatal to his invocation of *Ex parte Young*. He provides sufficient facts demonstrating the defendants' involvement in his injuries and that at least one of them could provide his requested injunctive relief. *See Doe v. DeWine*, 99 F. Supp. 3d 809, 817 (S.D. Ohio 2015) (citations omitted) (noting that the state officer's connection to and active involvement with the challenged act is necessary); *see also Coyle v. Univ. of Kent*ucky, 2 F. Supp. 3d 1014, 1020 (E.D. Ky. 2014).

Carroll seeks reinstatement; "restoration of [his] accrued benefits, including vacation and retirement contributions";[2] "issuance of a public corrective statement clearing [him] of all false allegations"; and removal of such "adverse references from University records." [Record No. 8 at ¶ 44] The relief sought is prospective, not retroactive, and he alleges that those continuing injuries violate federal law (ADA discrimination, First Amendment retaliation, etc.). *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) ("[Courts] need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (citation modified). The relief requested is to ensure future compliance with federal law, rather than monetary relief alone.[3]

Taking Carroll's pled facts as true, construing those facts and all reasonable inferences in his favor, and considering his *pro se* status (and the leniency afforded to him) he has adequately invoked *Ex parte Young*. Thus, amendment of his Complaint is unnecessary.

The contours of that exception, however, are circumscribed. Carroll may only invoke it against Nichols, O'Brien, Rios-Patjane, and Lysell as state officials in their official capacity,

---

[2]    As the Magistrate Judge correctly noted, insofar as this request seeks money damages for accrued *past* benefits, it is barred by the Eleventh Amendment. [Record No. 21 at 10 (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) ("[T] o the extent such sought relief would require Defendants to reopen a case and compensate a Plaintiff for previously unpaid benefits, this is prohibited retroactive relief barred by the Eleventh Amendment.").] It is not barred, however, insofar as it seeks reinstatement with the same accrued past benefits *prospectively*.

[3]    While the relief sought would have an impact on the treasury, the impact is only ancillary to the extent that payment from the treasury would be required to comply with federal law in the *future*. *Ernst*, 427 F.3d at 368 (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)) ("[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."); *see Edelman v. Jordan*, 415 U.S. 651, 668 (1974)).

but against not the University.[4]  *See Coyle*, 2 F. Supp. 3d at 1016–17 (citations omitted).  He may not seek monetary or retroactive relief.  And because the exception only applies to prospective relief for ongoing violations of *federal* law, Carroll cannot invoke it to resurect his barred state law tort claims (tortious interference, defamation, and IIED) against the individual defendants in their official capacity.

The result is different for Carroll's Kentucky Whistleblower Act claim against the University and the individual defendants in their official capacity.[5]  "KRS 61.102(1), prohibits retaliation by an 'employer' against a public employee '[w]ho in good faith reports, discloses, divulges . . . any facts or information relative to actual or suspected mismanagement, waste, fraud, [or] abuse of authority[.]'"  *Louisville & Jefferson Cnty. Metro. Sewer Dist. v. Hill*, 607 S.W.3d 549, 552 (Ky. 2020).  The Act holds the "Commonwealth or its agencies . . . per se liable for the acts of a policy maker or manager in violation of the statute."  *Cabinet for Fams. & Child. v. Cummings*, 163 S.W.3d 425, 431 (Ky. 2005).  While such claims may not be brought against the individual defendants in their individual capacity (because they are not employers), claims may be brought against the University and the individual defendants in their official capacity.  *See id.*

### IV.

Based on the foregoing analysis and discusson, it is hereby **ORDERED** as follows:

---

[4]     Furthermore, Section 1983 "'does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.'"  *Russell v. Univ. of Toledo*, 537 F.3d 596, 610 (6th Cir. 2008) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

[5]     *See infra* note 1.

1.      The Report and Recommendation of United States Magistrate Judge Atkins, issued on March 4, 2026, [Record No. 21] is **ADOPTED** and **INCORPORATED** consistent with this Memorandum Opinion and Order.

2.      Defendants University of Kentucky, Brian Nichols, Daniel O'Brien, Hector Rios-Patjane, and Regina Lysell's motion for partial dismissal [Record No. 12] is **GRANTED** with respect to Count I (Kentucky Whistleblower Act against O'Brien, Rios-Patjane, and Lysell in their individual capacity); Count II (ADA against the University and O'Brien, Rios-Patjane, and Lysell in their individual capacity); Count III (First Amendment against the University); Count IV (Fourteenth Amendment against the University); and Count V (unspecified civil rights against the University); Count VI (tortious interference against the University and all the individual defendants in their official capacity and Lysell in her individual capacity); Count VII (defamation against the University and all the individual defendants in their official capacity and Rios-Patjane and Lysell in their individual capacity); and Count VIII (IIED against the University and all individual defendants in their individual and official capacity).

The defendants' motion is further **GRANTED** for the following claims against all individual defendants in their official capacity *to the extent those claims seek damages*: Count II (ADA), Count III (First Amendment), Count IV (Fourteenth Amendment), and Count V (unspecified civil rights).

The defendants' motion is **DENIED** with respect to Count I (Kentucky Whistleblower Act against the University and all the individual defendants in their official capacity); Count VI (tortious interference against Rios-Patjane and O'Brien in their individual capacity), and Count VII (defamation against O'Brien in his individual capacity).

The defendants' motion is likewise **DENIED** for the following claims against all individual defendants in their official capacity *to the extent those claims seek injunctive relief*: Count II (ADA), Count III (First Amendment), Count IV (Fourteenth Amendment), and Count V (unspecified civil rights).[6]

3.    This matter remains referred to United States Magistrate Judge Atkins for entry of a scheduling order and further actions consistent with 28 U.S.C. § 636(b).

Dated:  April 2, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky

---

[6]    The undersigned notes that the defendants did not move to dismiss Count III (First Amendment), Count IV (Fourteenth Amendment) and Count V (unspecified civil rights) claims against O'Brien, Rios-Patjane, and Lysell in their individual capacity.